UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH CITY MOTORS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AUTOMOTIVE INDUSTRIES PENSION TRUST FUND, et al.,<br><br>Defendants. | Case No. 17-cv-04475-JST<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 22, 23 |

Before the Court is Plaintiffs' motion for summary judgment, ECF No. 22, and Defendants' cross-motion for summary judgment, ECF No. 23.[1] The Court will deny Plaintiffs' motion and grant Defendants' motion.

**I.  BACKGROUND**

Plaintiffs, South City Motors, Inc., Capital Expressway Ford, Inc., and Sunnyvale/ Peninsula Ford of Sunnyvale, are motor dealerships associated with Plaintiff, Ford Motor Company. ECF No. 22-1 at 6. Plaintiffs contributed to Defendant Automotive Industries Pension Trust Fund ("the Trust Fund") at various times. ECF No. 20 at 390. The Trust Fund is a multiemployer pension plan established under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). ECF No. 20 at 213; ECF No. 23 at 8.

In 2005, South City Motors and Capitol Expressway entered into collective bargaining agreements that required each to make contributions to the Fund. ECF No. 20 at 361. South City Motors signed a Pension Agreement with the Trust Fund agreeing to be bound by the provisions

---

[1] The citations in this order rely upon the Electronic Case Filing ("ECF") numbers for *South City Motors, Inc., et al., v. Automotive Industries Pension Trust Fund, et al.*, Case No: 17-cv-4475.

of the Trust Agreement in September 2005. *Id.* at 360-61. Capitol Expressway signed a Pension Agreement effective on August 27, 2005. *Id.* at 361.

The dispute in this case concerns Plaintiffs' withdrawal liability to the Trust Fund. Under ERISA, pension plans may "impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans." *Carpenters Pension Trust Fund for N. California v. Underground Const. Co., Inc.,* 31 F.3d 776, 778 (9th Cir. 1994). "Where a withdrawing employer's past contributions are insufficient to fund pension plan obligations that have already vested at the time of withdrawal, the MPPAA amendments enable plans 'to make withdrawing employers pay their proportionate share of the deficit such that remaining employers [will] not be unfairly saddled with increased payments.'" *Auto. Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc.*, 73 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014), *aff'd,* 672 F. App'x 685 (9th Cir. 2016) (quoting *Carpenters Pension*, 31 F.3d at 778).

> This "withdrawal liability" is assessed against the withdrawing employer, and 29 U.S.C. § 1301(b)(1) defines "employer" to include not only the entity obligated to contribute to the pension plan, but also all "trades or businesses" that are under "common control" with that entity. *See* 29 U.S.C. § 1301(b)(1). Congress enacted section 1301(b)(1) "to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities." *Teamsters Pension Trust Fund–Bd. of Trustees of W. Conference v. Allyn Transp. Co.,* 832 F.2d 502, 507 (9th Cir.1987); *see also, Bd. of Trustees of W. Conference of Teamsters Pension Trust Fund v. Lafrenz,* 837 F.2d 892, 894 (9th Cir.1988) ("The point of section 1301(b)(1) is simply to prevent the controlling group . . . from avoiding withdrawal liability by shifting corporate assets into other business ventures under its control.").

*Id.* at 1179-80.

However, ERISA also permits a multiemployer plan to adopt a walk-away provision that allows employers to participate in that plan for a limited period of time without incurring pension withdrawal liability upon withdrawal from the plan. *See* ERISA § 4201; 29 U.S.C. § 1390(a). Such a term is called a "free look provision." The free look provision exempts an employer from withdrawal liability if the employer had an obligation to contribute to the plan after March 1, 2005 and meets certain conditions. *See* U.S.C. § 1390.

2

Around March 1, 2005, the Trust Fund amended its Trust Agreement to adopt a free look provision. ECF No. 20 at 360. This provision allowed an employer participant to withdraw from the plan if the employer had been participating for less than five years. *Id.* South City Motors and Capitol Expressway withdrew from the Plan after contributing for fewer than five years. *Id.* at 361. The Trust Fund issued a withdrawal assessment against South City Motors and "and all commonly controlled trades or businesses ('the Ford Control Group')." ECF No. 29 at 221. This assessment calculated "withdrawal liability on the basis of South City Motor's membership in a controlled group of contributing employers that were at least 80% owned by Ford, including the Dealerships." ECF No. 1 ¶ 33.

South City Motors, Ford Motor Company, and the Ford control group requested a review of the Trust Fund's 2012 withdrawal liability assessment. *Id.* at 390-91. On or about October 19, 2012, the Trust Fund rejected all of Plaintiffs' grounds for review. *Id.* On December 17, 2012, South City Motors, Capitol Expressway, Ford Motor Company, and the Ford control group demanded arbitration of the Trust Fund's withdrawal liability assessments. *Id.* at 391. On February 24, 2017, the Arbitrator issued an award in favor of the Trust Fund. *See id.* at 11-23. On May 22, 2017, the Arbitrator issued an order approving the Trust Fund's request for attorney's fees. *See id.* at 10. The Arbitrator issued a final award on July 8, 2017. *See id.* at 7. Plaintiffs filed an action seeking to modify or vacate the award on August 7, 2017. *See* ECF No. 1. Defendants filed an action seeking to enforce the award on the same day. *See Automotive Industries Pension Trust Fund et al v. South City Motors, Inc., et al*, No 17-cv-4491 JST, ECF No. 1.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.

2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists.  *Id.* at 1102-03.  If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Review of Arbitration Proceedings

"Upon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award."  29 U.S.C. § 1401(b)(2).  "In any proceeding under subsection (b), there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct."  29 U.S.C. § 1401(c).  "The arbitrator's conclusions of law are reviewed de novo.  Whether a withdrawal within the meaning of the statute has occurred presents a mixed question of law and fact."  *Penn Cent. Corp. v. W. Conference of Teamsters Pension Tr. Fund*, 75 F.3d 529, 533 (9th Cir. 1996) (internal quotation marks and citations omitted).

An arbitrator's award of attorney fees is reviewed for an abuse of discretion.  *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 250 F. Supp. 3d 551, 558 (C.D. Cal. 2017) (citing *Penn Cent. Corp. v. W. Conference of Teamsters Pension Trust Fund*, 75 F.3d 529, 533 (9th Cir. 1996); *see also Trs. of Utah Carpenters' & Cement Masons' Pension Trust v. Loveridge*, 567 Fed.Appx. 659, 662 (10th Cir. 2014).

### III. DISCUSSION

Parties have submitted a joint stipulated record in support of their motion for summary judgment.  *See* ECF No. 20.  Plaintiffs argue that (1) the Arbitrator erred by denying plaintiffs an

4

evidentiary hearing and issuing an award on the Trust Fund's summary judgment motion; (2) the Arbitrator misapplied the law by failing to apply statutory withdrawal liability exemptions applicable to control group members; (3) the Arbitrator improperly interpreted the parties' 2007 settlement and permitted the Trust Fund to assess liability based on contribution histories pre-dating the settlement; and (4) the Trust Fund is not entitled to attorney's fees. ECF No. 22-1 at 2. Defendants argue that the Arbitrator did not err. ECF No. 23 at 3. Defendants seek "an order enforcing the Award and determining that the Trust Fund is entitled to recover reasonable attorney's fees and costs in these related cases." ECF No. 23 at 2.

The Court addresses Plaintiffs' arguments in turn.

**A. The Arbitrator Did Not Err By Issuing An Award On Summary Judgment**

Plaintiffs' first complaint is that the arbitrator entered summary judgment after briefing and oral argument, but without conducting a full evidentiary hearing. Plaintiffs contend the arbitrator lacked the authority to resolve the case in this fashion.

Arbitration proceedings to resolve disputes between an employer and the plan "shall be conducted in accordance with fair and equitable procedures to be promulgated by the corporation [Pension Benefit Guarantee Corporation or "PBGC"]." 29 U.S.C. § 1401(a)(2). The PBGC regulations establish "procedures, pursuant to section 4221 of ERISA, of withdrawal liability disputes." 29 C.F.R. § 4221.1(a). However, in lieu of these procedures "an arbitration may be conducted with an alternative arbitration procedure approved by the PBGC." 29 C.F.R. § 4221.14(a). "If an arbitration is conducted in accordance with a PBGC-approved arbitration procedure, the alternative procedure shall govern all aspects of the arbitration."[2]

In this instance, the arbitration was conducted pursuant to the Multi-employer Pension Plan Arbitration Rules for Withdrawal Liability ("MEPPA rules"). ECF No. 20 at 1195. Thus, the question of whether the Arbitrator was required to give Plaintiffs an evidentiary hearing before issuing an award on summary judgment is governed by those rules.

Plaintiffs first argue that withdrawal liability arbitrations ought to be conducted pursuant to

---

[2] There are five exceptions to this rule, but they are not relevant here. *See* 29 C.F.R. § 4221.14(b).

the regulations promulgated by the PBGC and that "those regulations do not permit an arbitration to proceed without a hearing absent party consent." ECF No. 22-1 at 16. Plaintiffs cite 29 C.F.R. § 4221.5(c): "The arbitrator may render an award without a hearing if the parties agree and file with the arbitrator such evidence as the arbitrator deems necessary to enable him or her to render an award under § 4221.8." While this regulation might imply that an arbitrator cannot render an award without a hearing without parties' consent, this regulation does not govern this arbitration. As explained above, the MEPPA rules govern whether the arbitrator can render an award without a hearing.

Plaintiffs further argue that the MEPPA rules require a hearing unless the parties affirmatively waive one, pointing to Section 33, which states in part that "[t]he parties may, by written agreement, waive oral hearings." ECF No. 20 at 1203; ECF No. 22-1 at 16. Plaintiffs omit part of Section 33 in their briefing. Section 33 continues, "If the parties are unable to agree as to the procedure, the Arbitrator shall specify a fair and equitable procedure consistent with Section 4221.5(c) of the PBGC regulations for the arbitration of disputes in multiemployer plans." ECF No. 20 at 1203-04. The purpose of Section 33 is to provide an avenue for the parties and the arbitrator to determine a procedure in lieu of an oral hearing. However, Section 33 does not require the arbitrator to hold a hearing before issuing an award on summary judgment. *See Atreus Communities Grp. of Arizona v. Stardust Dev., Inc.*, 229 Ariz. 503, 510 (Ct. App. 2012).[3]

In fact, while the MEPPA rules provide procedural guidance for hearings, ECF No. 20 at 1201-1203, nowhere do those rules state that a hearing is always required. The MEPPA rules are

---

[3] The parties may provide, by written agreement, for the waiver of oral hearings in any case. If the parties are unable to agree as to the procedure, the AAA shall specify a fair and equitable procedure. Although this provision provides a means for the parties to waive the hearing upon agreement, it does not address, and so does not preclude, one party from seeking summary judgment. Nor does it preclude the arbitrator, upon concluding that no issues of material fact exist, from determining that the matter can be resolved by summary judgment.

*Atreus*, 229 Ariz. At 510.

also silent on whether the arbitrator may issue an award on summary judgment without holding an evidentiary hearing. Section 24, which lays out the order of proceedings, allows an arbitrator "discretion to vary this procedure but shall afford full and equal opportunity to all parties for the presentation of any material or relevant proofs." ECF No. 20 at 1201-02. And Section 45 of the MEPPA rules gives the arbitrator the authority to "interpret and apply these rules insofar as they relate to the Arbitrator's powers and duties." ECF No. 20 at 1206.

In cases involving similar sets of arbitration rules, nearly every court to consider the question has held that "if the applicable rules do not specifically provide for such a procedure, and neither the rules nor the parties' agreement expressly preclude it, an arbitrator generally has the power to determine whether to grant a summary disposition without exceeding his authority." Michele L. Maryott, *The Trial on Paper: Key Considerations for Determining Whether to File A Summary Judgment Motion*, Litigation, Spring 2009, at 36, 39; *see*, *e.g.*, *Sherrock Bros. v. DaimlerChrysler Motors Co., LLC*, 260 F. App'x 497, 501–02 (3d Cir. 2008) ("Although the AAA Commercial Arbitration Rules do not specifically provide for motions for summary disposition, they do grant the arbitrator flexibility and discretion. Accordingly, federal courts have affirmed arbitration awards where the arbitrator ruled on a motion for summary judgment or on summary disposition.") (footnote omitted); *Campbell v. Am. Family Life Assur. Co. of Columbus*, 613 F. Supp. 2d 1114, 1119 (D. Minn. 2009) (holding that "summary judgment is permissible in arbitration"); *Hodgson v. IAP Readiness Mgmt. Support*, No. 510CV86, 2010 WL 3943698, at *4 (N.D. Fla. Sept. 20, 2010), *report and recommendation adopted*, No. 510CV86, 2010 WL 3943696 (N.D. Fla. Oct. 5, 2010) ("To the extent plaintiff attacks the arbitration award on the grounds that the arbitrator was guilty of misconduct because she used a summary procedure, plaintiff fails to state a plausible basis to vacate the arbitration award."); *Schlessinger v. Rosenfeld, Meyer & Susman*, 40 Cal. App. 4th 1096, 1105 (1995) ("We decline to read section 1286.2, subdivision (e), as requiring that an arbitrator always resolve disputes through the oral presentation of evidence or the taking of live testimony. To do otherwise would lead to anomalous results. The purpose of arbitration, as reflected in the Act, is to provide a 'speedy and relatively inexpensive means of dispute resolution.'") (quoting *Moncharsh v. Heily & Blase*, 3

Cal.4th 1, 9 (1992)); *Atreus Communities Grp. of Arizona v. Stardust Dev., Inc.*, *supra*, 229 Ariz. at 508 (Ct. App. 2012) ("Courts in other states have decided an arbitrator is authorized to grant summary judgment when the governing rules do not expressly address summary judgment in the arbitration proceeding. Those courts have held that when the parties' arbitration agreement and governing rules are silent as to whether an arbitrator can grant summary judgment, the arbitrator is authorized to do so unless the party opposing summary judgment is denied the fair opportunity to present its case."); *Brooks v. BDO Seidman, LLP*, 942 N.Y.S.2d 333, 334 (2012) ("Although the panel made a determination of the proceeding on respondent's motion for summary judgment, this was not improper since arbitrators are not compelled to conduct hearings, and may decide a case on summary judgment. Moreover, the arbitration clause of the parties' engagement letter did not prohibit the arbitrators from using this type of disposition.") (citations omitted); *Stifler v. Seymour Weiner, M.D., P.A.*, 62 Md. App. 19, 25 (1985) ("Although there is no provision in the statute for summary disposition . . . , we see no reason why a claim cannot be adjudicated on that basis in those instances where it may be susceptible to such treatment."). Similarly here, the Court concludes that the MEPPA rules do not require an arbitrator to hold a hearing before issuing an award on a summary judgment motion as long as the arbitrator has "afford[ed] [a] full and equal opportunity to all parties for the presentation of any material or relevant proofs." ECF No. 20 at 1202. The arbitrator in this case afforded that opportunity by allowing the presentation of evidence in support of and opposition to summary judgment.

Plaintiffs also argue that the "Arbitrator's failure to hold an evidentiary hearing denied Plaintiffs their right to present and cross examine witnesses before the fact finder." ECF No. 22-1 at 17. The Arbitrator followed the summary judgment standard set forth in the Federal Rules of Civil Procedure. ECF No. 20 at 15. Summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). By granting summary judgment, the Arbitrator determined that there were no genuine disputes of material fact. Plaintiffs could not have been denied the right to present any argument before a fact finder because there were no genuine disputes of fact. Plaintiffs may disagree with the Arbitrator's decision that there were no genuine disputes of fact,

8

in which case they can exercise their right to appeal under 29 U.S.C. Section 1401(b)(2). However, Plaintiffs have not offered the Court any evidence that they were not afforded a full and equal opportunity to present any material or relevant proof through the summary judgment proceeding.

There are sound policy reasons to uphold the arbitrator's ability to enter summary judgment. As the Arizona Court of Appeal stated cogently,

> The purpose of arbitration is to permit parties to agree to a more expedited and less costly means to resolve disputes than litigation in the courts. Summary judgment by an arbitrator is consistent with that purpose when the parties do not expressly prohibit summary judgment in their agreement, provided the parties receive a fair opportunity to present their case. To hold otherwise would run counter to the underlying purpose of arbitration by requiring parties in arbitration to prepare for and attend an evidentiary hearing when one party was entitled to an award as a matter of law.

*Atreus*, 229 Ariz. at 508–09. *See also Stifler*, 62 Md. App. at 25 (when there is no dispute of fact on a dispositive issue, "there is no reason to waste time, effort, and money on a full-scale trial on the merits of the claim").

The Court finds that the arbitrator did not err in issuing an award on summary judgment.

### B. The Statutory Withdrawal Exemption Applies to the Control Group as a Whole

The free look provision states that "[a]n employer who withdraws from a plan in a complete or partial withdrawal is not liable to the plan if the employer" meets certain conditions. 29 U.S.C. § 1390. The parties disagree about whether the free look provision applies to the control group as a whole or whether it can apply to individual plaintiffs. Plaintiffs argue that "the Arbitrator improperly concluded that ERISA's statutory free look exemption to withdrawal liability is inapplicable unless the exemption applies to an entire control group simultaneously." ECF No. 22-1 at 18. Defendants argue that "the controlled group is treated as a single employer for all withdrawal liability purposes." ECF No. 23 at 16.

The subchapter governing withdrawal liability provides a definition of employer. *See* 29 U.S.C. § 1301(b) ("For purposes of this subchapter . . . all employees of trades or businesses

9

(whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.). The free look provision does not apply unless "an employer" meets all the conditions pertaining to that designation. *See* 29 U.S.C. § 1390. It therefore follows that the free look provision does not apply unless "all employees of trades or businesses (whether or not incorporated) which are under common control" meet the conditions. Here, because Plaintiffs did not meet those conditions, the free look provision did not apply.

Plaintiffs cite *Robbins v. Pepsi-Cola Metro. Bottling Co.*, 636 F. Supp. 641, 654 (N.D. Ill. 1986) in support of their position. In *Robbins*, the Northern District of Illinois considered the partial withdrawal liability resulting from Pepsi-Cola and Pepsico's withdrawal from the Central State Pension Fund. *Id.* at 651. The court found that "the plain language of the statute clearly supports the Fund's assertion that the controlled group definition must be used to determine the fact of a withdrawal and to calculate the entire entity's withdrawal liability assessment." *Id.* at 655. The Fund tried to argue that "the statutory exemptions are inapplicable in the controlled group context, because § 1301(b)(1) requires the Fund to treat the controlled group as one entity, and to calculate its liability based on the entire group's decline in contributions." *Id.* at 656. The court found that the Pension Fund "erred in its attempted extension of the controlled group concept to exclude consideration of these statutory exceptions" and that "Title IV's statutory exemptions, like its controlled group provision, apply to all decisions regarding withdrawal liability under the MPPAA." *Id.* The court directed the Pension Fund to consider the conduct of the entire entity when determining the withdrawal liability of a controlled group, but also to give "due allowance" to "contribution declines stemming from a specific statutory exemption. *Id.* at 657.

Plaintiffs cite *Robbins* for the proposition that "[i]f a non-control group employer may exempt certain contribution declines from withdrawal liability, a control group employer must likewise be able to carve out contributions that are statutorily exempt." ECF No. 22-1 at 20. Even if this proposition accurately summarizes *Robbins*' holding, it does not support Plaintiffs' position. *Robbins* simply requires that the statutory exemption provisions "treat[] a 'controlled group'

10

employer like any other ERISA employer." *Robbins*, 636 F. Supp. at 657. Under *Robbins*, the free look provision requires control group employers to be treated like other ERISA employers. A non-control group employer is not exempt from withdrawal liability unless the employer meets all of the free look's requirements. Similarly, a control-group employer is not exempt from withdrawal liability unless the employer— which includes all employees of trades or businesses (whether or not incorporated) which are under common control—meets all of the free look's requirements. *See* 29 U.S.C. § 1301(b)

Therefore, the Arbitrator did not err. The free look exemption is only applicable if it applies to the entire control group.

**C.  The Arbitrator Properly Interpreted the 2007 Antioch Settlement Agreement**

In 2007, Antioch Ford withdrew from the Trust Fund. ECF No. 20 at 18. The Trust Fund Assessed complete withdrawal liability. *Id.* The Trust Fund and Antioch Ford entered into a settlement agreement on August 22, 2007. ECF No. 20 at 315. As part of the agreement, Antioch Ford agreed to pay the trust fund $209,342.70 "to settle the claims and/or potential claims arising out of, or in any way connected with the Dispute." *Id.* In return, the Trust Fund released the Ford Motor Company "from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, grievances, expenses, damages, judgment, orders and liabilities or whatever kind of nature in state or federal law, equity or otherwise, whether known or unknown to AIP Trust Fund . . . arising out of the Dispute." ECF No. 20 at 316. The Trust Fund also assumed "all risk for Claims that now exist, known or unknown arising out of the Dispute." *Id.* The Dispute is defined as the Trust Fund's "claims and demands against Antioch Ford and others, for 'withdrawal liability' (as such term is defined in Title IV of the Employee Retirement Security Act of 1974, as amended)." *Id.* at 315.

When calculating South City Motor's withdrawal liability assessment, the Trust Fund provided data "showing the contribution base units, and highest contribution rate, for each of the identified Ford Motor Company Group dealerships, for the actuary's use in revising the withdrawal lability calculation based on the contribution history of the group." ECF No. 20 at 30. This data included the contribution history of the Antioch Ford. ECF No. 31 at 1211. Plaintiffs

11

argue that the Trust Fund should not have assessed liability based on contribution histories that pre-date the settlement. ECF No. 22-1 at 24. They contend that the "settlement agreement released all claims against the control group for withdrawal liability and thus limited the Trust Fund from making further assessments based on the prior contribution history." *Id.* Defendants argue that the "release cannot reasonably be interpreted to affect future claims for withdrawal liability of the Ford Group that arise in 2009, and 2010, nor does it change the statutorily prescribed method by which that liability must be calculated, or the method of giving credit for previous payments that is set out in PBGC regulations." ECF No. 23 at 20.

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible[.]" Cal. Civ. Code. § 1639; *see also Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003) ("Under California law, the interpretation of contract language is a question of law."); *Hellweg v. Cassidy*, 61 Cal. App. 4th 806, 809 (1998) (same). Here, the settlement agreement states that the Trust Fund assumes "all risk for Claims that *now* exist, known or unknown arising out of the Dispute." ECF No. 20 at 316. (emphasis added). Therefore, according to the unambiguous language of the agreement, Ford was released from any claims and demands against Antioch Ford for withdrawal liability that existed on or before February 22, 2007. The claims at issue in this case did not exist on or before February 22, 2007. South City Motors stopped making contributions to the Fund around March 2009. ECF No. 20 at 361. The Fund's revised withdrawal liability assessment against South City Motors is dated March 30, 2012. ECF No. 20 at 390.

Furthermore, the 2007 settlement agreement is limited to claims arising out of "the dispute." The dispute was clearly defined in the agreement as the Trust Fund's "claims and demands against Antioch Ford and others, for 'withdrawal liability.'" ECF No. 20 at 315. The definition does not include a provision limiting how liability should be calculated in future withdrawal liability assessments. In the absence of such limitations, the Trust Fund was free to follow the statutorily prescribed method for assessing withdrawal liability that "includes protections to prevent employers from being double charged." ECF No. 19 at 25. *See* 29 U.S.C

1  § 1386; 29 C.F.R § 4206.[4]

2  Plaintiffs have not demonstrated that the Arbitrator erred in interpreting the 2007 Antioch settlement agreement.[5]

### D. The Arbitrator Did Not Abuse His Discretion In Awarding Attorney's Fees

Under Section 38 of the MEPPA rules, the Arbitrator "may assess reasonable attorney fees." ECF No. 20 at 1205. The Arbitrator exercised his discretion to award costs and reasonable attorneys' fees because the Trust Fund "incurred substantial attorneys' fees in defending against the Ford Group's legally baseless challenges to the withdrawal assessment, in a protracted arbitration proceeding that has lasted for over for over four years, largely due to the Ford Group's persistent, through eventually unsuccessful, efforts to inject inarbitable issues into the proceeding and to engage in overbroad and harassing discovery." ECF No. 20 at 22.

Plaintiffs argue that the arbitrator abused his discretion because their legal positions are not baseless. ECF No. 22-1 at 28. Plaintiffs contend that their positions are not baseless because "Plaintiffs and the Trust Fund both cite to relevant authority for the conflicting application of the 'free look' provision in the Trust Agreement." *Id.* Plaintiffs also argue that they did not unnecessarily protract the arbitration because they were forced to preserve their equitable arguments in the District Court after the Arbitrator ruled them non-arbitrable. *Id.* at 29. Plaintiffs argue that they did not bring these claims in bad faith because one of these claims is still pending and that this Court gave Plaintiffs leave to amend the other claims. ECF No. 24. Finally, Plaintiffs contend that they did not engage in overbroad or harassing discovery because they only

---

[4] The Trust Fund contends that it "could have treated the Antioch settlement payment (and the McHugh payment) as a prior partial withdrawal liability payments [sic] subject to the amortization rules of 29 C.F.R. § 4206.6, amortizing the credit over 5 years, beginning with the year of the partial withdrawal. However, the Trust Fund opted to assess the Ford Group's withdrawal liability to reflect its actual withdrawal history. This resulted in a larger credit to the Ford Group than it would have received had the payments been amortized." ECF No. 23 at 21-22. Defendants do not respond to this assertion and the Court does not address it.

[5] Under Section 16 of the MEPPA rules, an Arbitrator "may allow a party to conduct prehearing discovery . . . upon a showing that the discovery sought is likely to lead to the production of relevant evidence and will not be disproportionately burdensome to the other parties." ECF No. 20 at 1200. Plaintiffs argue that the Arbitrator improperly denied Plaintiffs' request to conduct discovery concerning the parties' intent. However, the language of the settlement agreement is unambiguous. The parties' intent can therefore be ascertained from the writing alone. *See* Cal. Civ. Code. § 1639.

13

sought "previously undisclosed instructions about how to incorporate the Antioch Ford settlement agreement payments into the Trust Fund's assessment." ECF No. 24 at 10.

The MEPAA rules allow an Arbitrator to "grant any remedy or relief within the scope of ERISA." Under ERISA, "the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party." 29 U.S.C. § 1451(e). Plaintiffs' arguments succeed, at best, only in establishing that there were two sides to the question of whether Plaintiffs' claims had merit. The factual conclusions on which the arbitrator relied in awarding fees were supported by record evidence. That this Court might weigh that evidence differently does not mean the arbitrator abused his discretion. The Court affirms the arbitrator's award of attorneys' fees.

### E. Defendants' Request for Attorneys' Fees Incurred in Case Nos. 17-cv-4475 is Denied

Defendants also request a discretionary award of fees and costs incurred in Case No. 17-xc-4475 and Case No. 17-cv-4491. "The factors to be considered in awarding attorney's fees are as follows: (1) the culpability or good faith of the opposing party; (2) the ability of opposing party to pay the award fees; (3) the degree of deterrence which would result from an award of fees; (4) whether a number of participants under an ERISA plan would benefit from an award of fees; and (5) the relative merits of the parties' positions." *Cuyamaca Meats, Inc. v. San Diego & Imperial Ctys. Butchers' & Food Employers' Pension Tr. Fund*, 827 F.2d 491, 500 (9th Cir. 1987) (citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980)). "[T]he key factors are the appellant's good faith or culpability and the relative merits of the parties' positions." *Id.* Applying these factors in analogous circumstances, the Ninth Circuit has stated that these "factors very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *Operating Eng'rs Pension Trust v. Gilliam,* 737 F.2d 1501, 1506 (9th Cir.1984).

While the Court has rejected Plaintiffs' arguments and affirmed the arbitrator's award, the Court does not find either that the Plaintiffs acted in bad faith or that their positions were objectively without basis. As indicated above, some of the questions raised by the briefs were ones of first impression. The Court denies Defendants' request for fees under 29 U.S.C. §

1451(e).

## CONCLUSION

Plaintiffs' motion for summary judgment, ECF No. 22, is denied. Defendants' cross motion for summary judgment, ECF No. 23, is granted. Defendants' request for attorneys' fees in connection with this district court action is denied.

**IT IS SO ORDERED.**

Dated: May 25, 2018

JON S. TIGAR
United States District Judge